UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER J. MADERIA,

                         *Plaintiff*,

     v.

THE VILLAGE OF SOUTH BLOOMING
GROVE,

                        *Defendant*.

No. 24-CV-7659 (KMK)

ORDER & OPINION

Appearances:

Christopher J. Maderia
Monroe, NY
*Pro se Plaintiff*

Louis U. Gasparini, Esq.
Schwab & Gasparini, PLLC
Brewster, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

       Christopher J. Maderia ("Plaintiff"), proceeding pro se, brings this Action against the Village of South Blooming Grove (the "Village" or "Defendant"), pursuant to 42 U.S.C. § 1983, alleging violations of his First and Fourth Amendment Rights. (*See* Compl. (Dkt. No. 1).) Plaintiff seeks an injunction "to prevent any further immediate restraint on [his] First and Fourth Amendment rights." (*Id.* § V(b).) Before the Court is Defendant's Motion to Dismiss (the "Motion"). For the reasons discussed below, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and are taken as true for the purposes of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff is a regular attendee of Village Board meetings.  (Compl. ¶ 6.)  The Village usually posts meeting agendas around noon the day of the meeting.  (*Id.*)  On September 19, 2024, the Village scheduled a Planning Board meeting for 8:00 PM.  (*Id.* ¶ 5.)  Plaintiff found that the day's agenda noted a "sign-in with address" requirement (the "Sign-In Requirement").  (*Id.* ¶ 7.)  Plaintiff conducted some research on public participation in local government meetings and traveled to the Village Board meeting.  (*Id.* ¶ 8.)  Plaintiff provided his research, consisting of six New York Open Meeting Law ("OML") "advisory opinions," to Village Planning Board Attorney Dan Kraushaar, and they discussed the Sign-In Requirement.  (*Id.* ¶¶ 9–11.)  Soloman Weiss, chair of the Village Planning Board, opened the meeting.  (*Id.* ¶ 13.)  Village Planner Thomas Shepstone ("Shepstone") presented the Sign-In Requirement rules "for each of the six . . . public hearings on the agenda."  (*Id.* ¶ 14.)  Plaintiff was told that he must provide his name and address in order to speak.  (*Id.* ¶ 15.)  Plaintiff provided Shepstone his six OML advisory opinions and said, "[h]ere are your six . . . opinions[,] Mr. Shepstone, see you in court."  (*Id.* ¶ 16.)  Plaintiff left the meeting without speaking.  (*Id.* ¶ 17.)  Plaintiff later discovered that Joel Stone ("Stone"), Assistant to the Mayor, tore up and threw out the OML advisory opinions Plaintiff had provided to Shepstone.  (*Id.* ¶ 18.)

On September 23, 2024, the Village held a Board meeting.  (*Id.* ¶ 19.)  Plaintiff attempted to speak but refused to identify himself or provide his address.  (*Id.* ¶¶ 23–24.)  Members of the

Village Board repeatedly cut Plaintiff off from speaking, asked him for his name and address, and "disparaged and shamed Plaintiff for not providing [his] name and address." (*Id.* ¶ 25.) Stone stated that the Village Board would "discontinue the public comment portion of the [V]illage [B]oard meetings due to Plaintiff's refusal to provide his name and address." (*Id.*)

B.  Procedural Background

Plaintiff initiated this Action on October 9, 2024. (*See* Compl.) On November 18, 2024, the Court setting a briefing schedule. (*See* Dkt. No. 10.) On December 18, 2024, Defendant filed the instant Motion. (*See* Not. of Mot. (Dkt. No. 13); Def's Mem. in Supp. of Mot. ("Def's Mem.") (Dkt. No. 13-4).) On January 16, 2025, Plaintiff filed his Opposition. (*See* Pl's Mem. in Opp. to Mot. ("Pl's Opp.") (Dkt. No. 15).) On February 12, 2025, Defendant filed its Reply. (*See* Def's Reply Mem. in Supp. of Mot. ("Def's Reply") (Dkt. No. 18).)[1]

II.  Discussion

A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

_____

[1] The Court notes that Plaintiff filed an Amended Complaint and two "witness declarations" with his Opposition to Defendant's Motion. (*See* Am. Compl. (Dkt. No. 14); Aff. of Bonnie Rum (Dkt. No. 16); Aff. of William Hewlett, Jr. (Dkt. No. 17).) Defendant argues that the Court should disregard these materials. (*See* Def's Reply 11–12.) The Court will consider the affidavits because it may properly consider materials that a pro se plaintiff attaches to his opposition papers. *See Murphy v. Rodriguez*, No. 23-CV-6998, 2024 WL 4290723, at *1 (S.D.N.Y. Sept. 25, 2024) (noting that a court may consider "documents that a pro se litigant attaches to his opposition papers" (quoting *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010))). The Court notes that the affidavits were filed twelve days after Plaintiff's Opposition but still considers them in light of the solicitude afforded pro se plaintiffs. The Court will consider the Amended Complaint after determining whether to grant Defendant's Motion as to the original Complaint. *See infra* Section II.B.2.

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the

Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration

adopted) (internal quotation marks and citation omitted).  Rather, a complaint's "[f]actual

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550

U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if

a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[]

complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration

adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at

678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading

regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with

nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Moreover, where, as here, a plaintiff proceeds pro se, the Court must construe his submissions "liberally and interpret [them] to raise the strongest arguments that [they] suggest[]."  *Ashmeade v. Amazon.com*, No. 23-CV-4331, 2024 WL 4266391, at *7 (S.D.N.Y. Sept. 23, 2024) (alterations adopted) (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (same). Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

B.  Analysis

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech."  U.S. CONST. amend. I.  Plaintiff alleges that the Sign-In Requirement

(1) violates his First Amendment rights and (2) constitutes an unreasonable search and seizure under the Fourth Amendment.  (Compl. ¶¶ 28–29.)  The first claim reads as alleging an unlawful forum-based restriction of Plaintiff's First Amendment rights.  As to the second claim, Plaintiff asserts in Opposition that "Defendant violated [] Plaintiff['s] right to political anonymity in the advocacy of political affairs in his community on governmental interests when the Defendant required a search of the Plaintiff's persons for his name and address."  (Pl's Opp. 8.)  This argument sounds in a First Amendment claim, as opposed to a Fourth Amendment claim.  *See Antonyuk v. James*, 120 F.4th 941, 1003 (2d Cir. 2024) ("It is uncontroversial that the First Amendment protects the right to speak anonymously." (citing *Cornelio v. Connecticut*, 32 F.4th 160, 169–70 (2d Cir. 2022))).  While the Fourth Amendment does extend to the seizure of intangibles, *see Caldarola v. County of Westchester*, 343 F.3d 570, 574 (2d Cir. 2003), Plaintiff's "Fourth Amendment" claim is more properly read as a claim alleging that the Village's Sign-In Requirement violates Plaintiff's First Amendment right to anonymous speech, *see CompassCare v. Hochul*, 125 F.4th 49, 63 (2d Cir. 2025) ("The right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." (quoting *Wooley v. Maynard*, 430 U.S. 705, 714 (1977))).

"The first issue to be addressed in any challenge to the constitutional validity of a rule under the First Amendment is whether a First Amendment right exists, for if it does not, [a court] need go no further."  *Potanovic v. Town of Stony Point*, 651 F. Supp. 3d 677, 682 (S.D.N.Y. 2023), *aff'd*, No. 23-CV-204, 2024 WL 3159221 (2d Cir. June 25, 2024).  Both of Plaintiff's claims concern a First Amendment right, albeit different ones—the right to speak at a government meeting, *see id.* ("To be sure, the activity of speaking at Town Board meetings, within the purpose for which the limited public forum was opened, is protected speech."), and

6

the right to anonymous speech, *Cornelio*, 32 F.4th at 169–70 ("A speaker's decision 'to remain anonymous . . . is an aspect of the freedom of speech protected by the First Amendment.'" (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995))).

The next step is determining what level of constitutional scrutiny to apply to the restrictions on speech protected by the First Amendment.  *See Justice For All v. Faulkner*, 410 F.3d 760, 765 (5th Cir. 2005) (finding that a policy prohibiting anonymous leafletting implicated First Amendment protected speech and holding that the court's "analysis turns on how the [property at issue] is classified as a forum for protected speech under the Supreme Court's precedents").  "[N]othing in the Constitution requires the [g]overnment freely to grant access to all who wish to exercise their right to free speech on every type of [g]overnment property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Madden v. Town of Hempstead*, No. 16-CV-6835, 2019 WL 1439935, at *13 (E.D.N.Y. Mar. 29, 2019) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799–800 (1985)).  Accordingly, courts

> analyze speech restrictions on publicly owned property according to a forum-based approach.  Under this approach, "[f]ora for expression are classified into four categories, which fall along a spectrum extending from those deserving the greatest constitutional protection to those deserving the least constitutional protection: (1) the traditional public forum; (2) the designated public forum; (3) the limited public forum; and (4) the non-public forum."

*Tyler v. City of Kingston*, 74 F.4th 57, 61 (2d Cir. 2023) (quoting *R.O. ex rel. Oschorn v. Ithaca City Sch. Dist.*, 645 F.3d 533, 539 (2d Cir 2011)).  Traditional public forums include "parks, streets, sidewalks, and the like," and designated public forums include "spaces that 'have not traditionally been regarded as a public forum' but which the government has 'intentionally opened up for that purpose.'" *Minn. Voters All. v. Mansky*, 585 U.S. 1, 11 (2018) (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 469–70 (2009)).  "The limited public forum is a

subset of the designated public forum." *Reyes v. City of New York*, No. 23-CV-6369, 2023 WL 7212192, at *7 (S.D.N.Y. Nov. 2, 2023), *appeal filed*, No. 23-7640 (2d Cir. Nov. 3, 2023). "[A] limited public forum is created when the government opens a nonpublic forum for public expression, but limits expressive activity to certain kinds of speakers or the discussion of particular subjects." *Tyler*, 74 F.4th at 61 (quoting *Hotel Emps. & Rest. Emps. Union, Loc. 100, AFL CIO v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 552 (2d Cir. 2002)). "Restrictions on speech in a limited public forum must be viewpoint neutral and reasonable in light of the forum's nature and purpose." *Cipolla-Dennis v. County of Tompkins*, No. 21-712, 2022 WL 1237960, at *1 (2d Cir. Apr. 27, 2022) (citing *Pleasant Grove*, 555 U.S. at 470).

Defendant asserts that the Village Board meetings are limited public fora for the purposes of the First Amendment. (*See* Def's Mem. 6–7.) The Court agrees. The Complaint notes that the meetings at issue in this Action occurred at the same location in the Village. (*See* Compl. ¶ 5.) While there are no further details on the exact nature of this location, the Court finds this sufficient to establish that a Village Board meeting is a limited public forum. (*See id.* ¶¶ 4, 5 (alleging that the Village is "located" at the same address at which the meetings in question took place).) *See also Tyler*, 74 F.4th at 61 (noting that "the [local government] meetings at issue are limited public fora"); *Santucci v. Levine*, No. 17-CV-10204, 2019 WL 3742286, at *10 (S.D.N.Y. Aug. 8, 2019) ("'Courts have generally held that a public meeting of an elected municipal board . . . is a limited public forum for the purposes of First Amendment analysis.' This includes the public comment portions of municipal board meetings." (first quoting *Malta v. Slagle*, No. 05-CV-342S, 2007 WL 952045, at *3 (W.D.N.Y. Mar. 29, 2007), then citing *Cipolla-Dennis v. Cnty. of Tompkins*, No. 18-CV-1241, 2019 WL 2176669, at *6 (N.D.N.Y. May 20, 2019))); *Madden*, 2019 WL 1439935, at *14 (holding that "a public meeting of an

elected municipal board . . . is considered to be a limited public forum" and collecting cases).
Plaintiff argues that a forum analysis "must adhere to the Plaintiff's right to anonymity in
'public' no matter [the] setting . . . ." (Pl's Opp. 2.)  Plaintiff cites no authority for this
proposition, which is incorrect as it flips the constitutional inquiry on its head and argues that the
type of forum has no impact on the constitutionality of a speech restriction.  The final step in the
analysis is applying the appropriate level of scrutiny—here, whether Plaintiff has plausibly
alleged that the Village's restriction is not viewpoint neutral and reasonable.

  "To determine if a restriction rises to the level of viewpoint discrimination, [the Court]
consider[s] 'whether—within the relevant subject category—the government has singled out a
subset of messages for disfavor based on the views expressed.'"  *Cipolla-Dennis*, 2022 WL
1237960, at *2 (quoting *Matal v. Tam*, 582 U.S. 218, 248 (2017) (Kennedy, J., concurring in part
and concurring in the judgment)).  The restriction that Plaintiff challenges asks that anyone
wishing to speak at the Village Board meeting "provide [their] name and address as a condition
of political speech."  (Compl. ¶ 23.)  This restriction is "1) viewpoint neutral in that it does not
ask speakers to disclose any particular viewpoint; and 2) reasonable in terms of organizing and
orienting public comments to the [Village Board]."  *Cipolla-Dennis v. County of Tompkins*,
No. 18-CV-1241, 2021 WL 964244, at *6 (N.D.N.Y. Mar. 15, 2021), *aff'd*, No. 21-712, 2022
WL 1237960 (2d Cir. Apr. 27, 2022).  Indeed, other courts have upheld similar requirements at
local government meetings.  *See id.* at *6–7 (granting summary judgment on plaintiff's claim
that a sign-in requirement violated her First Amendment rights); *cf. Komatsu v. City of New
York*, No. 20-CV-7046, 2021 WL 256956, at *2 (S.D.N.Y. Jan. 26, 2021) (denying a preliminary
injunction, after finding that plaintiff had not shown likelihood of success on the merits for his

claim that the requirement for a speaker at a municipal meeting complete a form indicating the subject of the speaker's testimony violated the First Amendment).

Plaintiff's Complaint and Opposition amount to a broadside attack on the propriety of the Sign-In Requirement, but this is not enough to defeat Defendant's Motion. Plaintiff refers to the New York OML, the New York state constitution, and the United States Constitution and asserts that this "legal tapestry" renders any analysis of public fora "irrelevant." (*See* Pl's Opp. 6–7.) Plaintiff provides no citations or support for this assertion. On the contrary, "[u]nder the prevailing constitutional framework, speech restrictions imposed by the government on property that it owns are analyzed under a 'forum based' approach." *Hotel Emps.*, 311 F.3d at 544. The Court declines Plaintiff's invitation to reject well-settled First Amendment jurisprudence and grants Defendant's Motion.[2]

### 2. Amended Complaint

The only substantive difference between the Complaint and Amended Complaint is that the latter includes two First Amendment retaliation claims. (*Compare* Compl. ¶¶ 28–29 *with* Am. Compl. ¶¶ 28–32; *see* Am. Compl. ¶¶ 30–31 (asserting two First Amendment retaliation claims).) The Court analyzes these claims below.

"A plaintiff asserting a First Amendment retaliation claim must establish that: '(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the

---

[2] As the Court has found that Plaintiff fails to adequately state any claim, "the Court accordingly dismisses Plaintiff's [request for] . . . injunctive relief." *Rivera v. Dep't of Corr.*, No. 24-CV-1462, 2024 WL 4766211, at *3 n.4 (D. Conn. Nov. 13, 2024); *see also Sheppard v. Manhattan Club Timeshare Ass'n*, No. 11-CV-4362, 2012 WL 1890388, at *9 (S.D.N.Y. May 23, 2012) ("Because the Complaint fails to state a substantive claim, the claim for injunctive relief also is dismissed.").

protected speech.'"  *Barkai v. Nuendorf*, No. 21-CV-4060, 2023 WL 2691712, at *17 (S.D.N.Y.

Mar. 29, 2023) (quoting *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015)).  "To

constitute adverse action, conduct must be of the type that would deter a similarly situated

individual of ordinary firmness from exercising his or her constitutional rights."  *Walker v.

Senecal*, 130 F.4th 291, 298 (2d Cir. 2025) (citation and quotation marks omitted).

Plaintiff did not speak at the September 19, 2024, meeting.  (*See* Am. Compl. ¶ 17.)

Plaintiff attempted to speak at the September 23, 2024, meeting but was "repeatedly cut-off from

speaking."  (*Id.* ¶ 25.)  Plaintiff has therefore not alleged that he engaged in protected speech.

Where "there [is] no protected activity to be retaliated against," a First Amendment retaliation

claim "must fail."  *Vann v. Wolfe-Friedman*, No. 23-CV-236, 2025 WL 35058, at *3 (S.D.N.Y.

Jan. 6, 2025); *see also Quinones v. City of Binghamton*, 997 F.3d 461, 467 (2d Cir. 2021)

("[Plaintiff] fails to state a retaliation claim because he alleges no speech or conduct protected by

the First Amendment for which Defendants [took any adverse action].");  *McAvey v. Orange-

Ulster BOCES*, 805 F. Supp. 2d 30, 41 (S.D.N.Y. 2011) (dismissing a First Amendment

retaliation claim where there was no protected speech).

Plaintiff could argue that his "See you in court" comment at the September 19, 2024,

meeting was protected speech.  (Am. Compl. ¶ 16.)  "To be sure, the activity of speaking at

[local government] meetings, within the purpose for which the limited public forum was opened,

is protected speech."  *Potanovic v. Town of Stony Point*, 651 F. Supp. 3d 677, 682 (S.D.N.Y.

2023), *aff'd*, No. 23-CV-204, 2024 WL 3159221 (2d Cir. June 25, 2024).  However, Plaintiff has

failed to plausibly allege an adverse action.  The First Amendment prohibits state actors "from

encouraging the suppression of speech in a manner which 'can reasonably be interpreted as

intimating that some form of punishment or adverse regulatory action will follow the failure to

accede to the official's request.'" *A.S. v. City Sch. Dist. of Albany*, 585 F. Supp. 3d 246, 287 (N.D.N.Y. 2022) (quoting *A.F. ex rel. Fenton v. Kings Park Centr. Sch. Dist.*, 341 F. Supp. 3d 188, 201 (E.D.N.Y. 2018) (citation omitted)). However, "not every assertion of a chilling effect will be considered a judicially cognizable First Amendment violation." *A.F.*, 341 F. Supp. 3d at 201 (quoting *Levin v. Harleston*, 966 F.2d 85, 89 (2d Cir. 1992)). Disparaging comments by Board members do not constitute an adverse action because "verbal threats . . . must be sufficiently specific and direct to be actionable." *Gomez v. Westchester County*, No. 18-CV-244, 2021 WL 4443379, at *17 (S.D.N.Y. Sept. 28, 2021) (quoting *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *11 (S.D.N.Y. Sept. 28, 2018)); *Stapleton v. Pagano*, No. 19-CV-952, 2020 WL 4606320, at *6 (S.D.N.Y. Aug. 11, 2020) ("[W]hether [verbal threats] constitute adverse action seems to depend on their specificity and the context in which they are uttered[.]" (quoting *Hofelich v. Ercole*, No. 06-CV-13697, 2010 WL 1459740, at *2 (S.D.N.Y. Apr. 8, 2010))). Here, the allegations are neither specific nor direct and do not constitute a threat. (*See* Am. Compl. ¶ 25 (alleging that the Board members "disparaged and shamed Plaintiff for not providing [his] name and address").)

Even if the Board members' disparaging comments or the application of the Sign-In Requirement could be considered adverse actions, Plaintiff has failed to allege a causal connection between the protected speech and the adverse action. "[T]o demonstrate a causal connection a plaintiff must show that the protected speech was a substantial motivating factor in the adverse . . . action." *Lopez v. Falco*, No. 23-CV-10420, 2024 WL 4252561, at *9 (S.D.N.Y. Sept. 19, 2024) (quoting *Smith v. County of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015)). "A plaintiff, however, may not rely on conclusory assertions of retaliatory motive to satisfy the causal link. Instead, he must produce some tangible proof to demonstrate that his version of

what occurred was not imaginary." *Id.* at *15 (alterations adopted) (quoting *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004)).  Here, Plaintiff's Amended Complaint offers no non-conclusory factual allegations that his "See you in court" statement was a substantial motivating factor in the Board members' disparaging comments or the application of the Sign-In Requirement. Accordingly, the Court finds that Plaintiff's Amended Complaint also fails to plausibly allege any claims.

### III.  Conclusion

For the reasons set forth above, Defendant's Motion is granted.  Plaintiff's Amended Complaint is dismissed without prejudice as this is the first adjudication of Plaintiff's allegations. If Plaintiff wishes to file a second amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within thirty days of the date of this Opinion & Order.  *See Tyson v. Town of Ramapo*, No. 17-CV-4990, 2019 WL 1331913, at *19 (S.D.N.Y. Mar. 25, 2019) ("The Court will afford [p]laintiff an opportunity to amend if, after reviewing this Order and Opinion and the law therein, he believes that he can plausibly state claims against [d]efendants." (citation omitted)).  There will be no extensions.  Plaintiff is further advised that a second amended complaint will completely replace, not supplement, the Amended Complaint.  Any second amended complaint must therefore contain *all* of the claims, defendants, and factual allegations that Plaintiff wishes the Court to consider.  If Plaintiff fails to timely file a second amended complaint, the dismissed claims may be dismissed with prejudice.

The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 13.

SO ORDERED.

Dated:    September 23, 2025
          White Plains, New York

KENNETH M. KARAS
United States District Judge

14